Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOEMAN MUSIC GROUP MEDIA AND PHOTOGRAPHY LLC, <br><br> Plaintiff, <br><br> v. <br><br> DISTROKID, LLC, et al., <br><br> Defendants. | Case No. 23 Civ. 4776 (MMG) <br><br> **MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT RAQUELLA "ROCKY SNYDA" GEORGE** |

Pursuant to Federal Rule of Civil Procedure 55(b) and Local Civil Rule 55.2, Plaintiff Doeman Music Group Media and Photography LLC ("Doeman") hereby moves for and respectfully requests the entry of default judgment against Defendant Raquella "Rocky Snyda" George in the amount of **$60,400**, subject to further increases for prevailing-party attorney fees and costs under Rule 54(d).

Dated: March 26, 2024                    Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Plaintiff*

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... 4

ARGUMENT ............................................................................................................... 6

I.    ENTRY OF DEFAULT & JURISDICTION ....................................................... 6

    A.    Default-Judgment Standard. ................................................................. 6

    B.    Application Here. .................................................................................. 7

        i.    Subject-Matter Jurisdiction ..................................................... 7

        ii.    Personal Jurisdiction ............................................................... 7

        iii.    Certificate of Default ............................................................... 7

II.    LIABILITY ON DEFAULT JUDGMENT. ...................................................... 8

    A.    Default-Judgment Standard ................................................................ 8

    B.    17 U.S.C § 512(f) Standard ................................................................. 8

    C.    Application Here .................................................................................. 9

        i.    Out of personal spite, Defendant George knowingly misrepresented in a takedown request the Doeman was infringing its own music. ................. 9

        ii.    As a result of her willful misrepresentation, Doeman's music was removed or disabled from various music streaming services. ................. 10

        iii.    Doeman was injured as a result, losing both revenue and incurring substantial expense to fix the issue and get its music back online ........... 10

III.    REMEDIES ON DEFAULT JUDGMENT ...................................................... 11

    A.    Default-Judgment Standard ................................................................ 11

    B.    17 U.S.C. § 512(f) Remedies ............................................................. 11

    C.    Application Here .................................................................................. 12

        i.    Lost Streams ............................................................................ 12

        ii.    Lost Performances ................................................................... 12

        iii.    Lost Time ................................................................................. 12

iv.     Attorney Fees (as damages) ................................................................... 13

v.      Attorney Fees (as further remedy) ......................................................... 13

vi.     Full Costs ............................................................................................... 14

vii.    Nominal Damages ................................................................................... 14

CONCLUSION ............................................................................................................ 14

DECLARATION OF COUNSEL ................................................................................. 15

DECLARATION OF PARTY ....................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................... 21

# TABLE OF AUTHORITIES[1]

## Cases

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
  687 F. App'x 10 (2d Cir. 2017) ................................................................ 6

*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*,
  779 F.3d 182 (2d Cir. 2015) ............................................................ 8, 11

*Bus. Casual Holdings, LLC v. Tv-Novosti*, 2023 U.S. Dist. LEXIS 21724 (S.D.N.Y. Feb. 8, 2023) ................................................................................................ 9

*Capitol Records, Inc. v. Mp3tunes, LLC*,
  611 F. Supp. 2d 342 (S.D.N.Y. 2009) .................................................. 10

*Castiglione v. Papa*,
  423 F. App'x 10 (2d Cir. 2011) ............................................................. 6

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ..........................................................6, 7, 11

*Columbia Trading Corp. v. Green Elecs., LLC*, 2018 U.S. Dist. LEXIS 129048 (D.N.J. July 27, 2018) ................................................................................................ 9

*Gesualdi v. Quadrozzi Equip. Leasing Corp.*,
  629 F. App'x 111 (2d Cir. 2015) ........................................................... 8

*Gomez v. 4 Runners, Inc.*,
  769 F. App'x 1 (2d Cir. 2019) ............................................................. 11

*House v. Kent Worldwide Mach. Works, Inc.*,
  359 F. App'x 206 (2d Cir. 2010) ....................................................... 8, 11

*Paul Rudolph Found. v. Paul Rudolph Heritage Found.*,
  2021 U.S. Dist. LEXIS 188648 (S.D.N.Y. Sept. 21, 2021).................... 9

*Peterson v. Syracuse Police Dep't*,
  467 F. App'x 31 (2d Cir. 2012) ............................................................. 6

*Priestley v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011) ....................... 6

*United States v. Starling*, 76 F.4th 92 (2d Cir. 2023) ................................. 6

---

[1] Herein, all emphasis is added unless otherwise indicated. Cites to the record are to the "Dkt." by number and using the pagination of ECF stamps — not the internal pagination of the document, if the two differ.

*White v. UMG Recordings, Inc.*,
 2022 U.S. Dist. LEXIS 228715 (S.D.N.Y. Aug. 16, 2022) ........................................ 9

**Statutes**

17 U.S.C. § 512(f) ........................................................................................................ 7, 9

28 U.S.C. § 1331 ............................................................................................................ 7

28 U.S.C. § 1338(a) ....................................................................................................... 7

*See* 17 U.S.C. § 512(c)(3)(A)(v) ................................................................................. 10

**Rules**

Fed. R. Civ. P. 4(e)(2)(A) .............................................................................................. 7

Fed. R. Civ. P. 55(b) ...................................................................................................... 8

## ARGUMENT

The entry of default judgment is governed by Federal Rule of Civil Procedure 55(b) and by S.D.N.Y. Local Civil Rule 55.2. There are three required showings: **(1)** prior entry of default and jurisdictional authority of the Court to enter a judgment, **(2)** a finding of liability under the operative complaint, taking all allegations as true in light of the default, and **(3)** a determination of remedies upon evidentiary submissions. *E.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) ("Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."); *United States v. Starling*, 76 F.4th 92, 98 (2d Cir. 2023); *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-505 (2d Cir. 2011); *Castiglione v. Papa*, 423 F. App'x 10, 12 (2d Cir. 2011).

### I.    ENTRY OF DEFAULT & JURISDICTION

#### A.    **Default-Judgment Standard.**

"The first step is to obtain an entry of default." *Priestley*, 647 F.3d at 504-505; *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (obtaining "a certificate of default" is "only the first step on the way to obtaining a default judgment"); *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012) ("Although Rule 55(a) contemplates that entry of a default is a 'ministerial' step to be performed by the clerk of court, a district court judge also possesses the inherent power to enter a default."). Entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis*, 645 F.3d at 128.

Also, before a district court grants "a motion for default judgment, it *may* first assure itself that it has personal jurisdiction over the defendant." *Id.* at 133. That said, the Second Circuit does not appear to *require* investigation into *personal* jurisdiction, as a defense on personal jurisdiction can be waived. *Id.* (noting question "left open").

B.    **Application Here.**

This Court has subject-matter jurisdiction over the claims against Defendant George.  It has personal jurisdiction over her.  And, Defendant George's default has been entered and certified by the Clerk of Court.

#### i.    *Subject-Matter Jurisdiction*

Federal courts have exclusive original jurisdiction over claims arising "under any Act of Congress relating to […] copyrights[.]"  28 U.S.C. § 1338(a); *see also* 28 U.S.C. § 1331 (general federal-question jurisdiction).  The claims against Defendant George arise under 17 U.S.C. § 512(f), *i.e.*, under the Digital Millennium Copyright Act, an Act of Congress relating to copyrights.  Dkt.4 at 32¶140-33¶144.  Thus, this Court has exclusive federal subject-matter jurisdiction.

#### ii.    *Personal Jurisdiction*

Personal jurisdiction is established when a process server "deliver[s] a copy of the summons and of the complaint to the individual personally[.]"  Fed. R. Civ. P. 4(e)(2)(A).  That's what happened here: personal service within the State of New York.  Dkt.24.  Thus, this Court has personal jurisdiction.

#### iii.    *Certificate of Default*

Finally, the Clerk has entered default by issuing a Certificate of Default.  Dkt.44.  This Certificate "formalizes a judicial recognition that [Defendant George] has, through [her] failure to defend the action, admitted liability to [Doeman]."  *See Mickalis*, 645 F.3d at 128 (2d. Cir.).

## II.    LIABILITY ON DEFAULT JUDGMENT.

### A.    Default-Judgment Standard

A party's default constitutes an admission of the truth of the allegations in the complaint—with reasonable inferences taken in favor of the plaintiff.  *E.g.*, *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) ("A "party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]"); *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) ("It is an ancient common law axiom' that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." (cleaned up)); *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) ("Because [defendant] defaulted, the [plaintiffs'] pleaded allegations are accepted as true, except those related to damages, and the [plaintiffs] are entitled to all reasonable inferences from the evidence they presented.").

This legal standard is likely familiar to the Court.  It's roughly the same standard that applies when a defendant moves to dismiss under Rule 12(b)(6)—*i.e.*, requiring judicial examination of the complaint to ascertain when the elements of a claim are stated—but with one central and crucial difference: if the elements are stated, then *judgment* is entered in favor of the plaintiff and against the defaulting defendant.  Fed. R. Civ. P. 55(b).

### B.    17 U.S.C § 512(f) Standard.

The operative statutory provision that creates the cause of action states, in full, as follows:

(F) MISREPRESENTATIONS.— Any person who knowingly materially misrepresents under this section—

> (1)    that material or activity is infringing, or
>
> (2)    that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f).

There are three elements: that a "defendant **(1)** knowingly misrepresented to [a service provider] that Plaintiff was posting content in violation of the defendant's purported copyrights to that content; **(2)** that, relying on that defendant's willful misrepresentation, [the service provider] removed or disabled access to the posts in question; and **(3)** that, as a result of the aforementioned series of events, Plaintiff has incurred damages." *E.g.*, *White v. UMG Recordings, Inc.*, 2022 U.S. Dist. LEXIS 228715, *9 (S.D.N.Y. Aug. 16, 2022); *Bus. Casual Holdings, LLC v. Tv-Novosti*, 2023 U.S. Dist. LEXIS 21724, *21 (S.D.N.Y. Feb. 8, 2023); *Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, 2021 U.S. Dist. LEXIS 188648, *36-37 (S.D.N.Y. Sept. 21, 2021). All three elements are met here.

### C.  <u>Application Here</u>

> i.  <u>*Out of personal spite, Defendant George knowingly misrepresented in a takedown request the Doeman was infringing its own music.*</u>

"Liability may be imposed under § 512(f) only if the misrepresentation was knowing." *Columbia Trading Corp. v. Green Elecs., LLC*, 2018 U.S. Dist. LEXIS 129048, *11 (D.N.J. July 27, 2018); *White v. UMG Recordings, Inc.*, 2022 U.S. Dist. LEXIS 228715, *8-9 (S.D.N.Y. Aug. 16, 2022) ("In order to state a claim under § 512(f), courts in this Circuit require plaintiffs to show 'actual knowledge,' *i.e.*, that the defendants knew that they were making a material misrepresentation.").

Defendant George sent a takedown notice against the entity, Doeman, that she knew was the lawful copyright owner of the materials.  She did so out of personal spite.  Specifically, it is now established that Defendant George submitted the takedown out of personal spite: Defendant "George's Takedown Request knowingly misrepresented that Doeman's material—'Scary Movie'—was infringing.  Ms. George was and is well aware that Doeman and Mr. Wilson had the rights in "Scary Movie"—and she did not care but rather acted out of personal animus and spite." Dkt.4 at 33¶143; *see* Dkt.4 at 22¶¶87-99.  Accordingly, Defendant George knew that her takedown request was a misrepresentation.

       ii.    <u>As a result of her willful misrepresentation, Doeman's music was removed or disabled from various music streaming services.</u>

Likewise, as a result of Defendant George's takedowns, Doeman's music was removed or disabled from the streaming services.  Dkt. 4 at 23¶100-27¶117; *see Capitol Records, Inc. v. Mp3tunes, LLC*, 611 F. Supp. 2d 342, 346 (S.D.N.Y. 2009) ("A material misrepresentation is one that "affected the [infringer or service provider's] response to a DMCA letter.").  Indeed, to even send the takedown notices, Defendant George had to certify to a "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law."  *See* 17 U.S.C. § 512(c)(3)(A)(v).  If she had not done so—if she had not willfully and intentionally lied about her knowledge of Doeman's authorship, ownership, and, consequently, its right to exploit *its own music*—then Defendant George wouldn't have been able to effectuate a takedown notice or gotten the music taken down.

       iii.    <u>Doeman was injured as a result, losing both revenue and incurring substantial expense to fix the issue and get its music back online.</u>

Although the complaint establishes some of Doeman's damages, *e.g.*, Dkt.4 at 31¶132, Defendant George's harms are more fully detailed below.  *See* Section III, *infra*.  Accordingly, the elements of a §512(f) claim are met.

### III.    REMEDIES ON DEFAULT JUDGMENT

#### A.    Default-Judgment Standard

Although the default "establishes legal liability, courts must still 'ascertain the amount of damages with reasonable certainty,' accepting as true all factual allegations in the complaint except those relating to damages[.]"  *E.g.*, *Gomez v. 4 Runners, Inc.*, 769 F. App'x 1, 2 (2d Cir. 2019). Rule 55(b)(2) sets forth many options for a showing of proof of damages.  Fed. R. Civ. P. 55(b)(2)(A)-(D) (listing options); *see*, *e.g.*, *Mickalis*, 645 F.3d at 128-129 ("A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages[.]"); *Bricklayers*, 779 F.3d at 189 ("briefs, audits, and affidavits"); *Gomez*, 769 F. App'x at 3 ("supporting affidavits and exhibits, setting forth proof" of damages); *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207-208 (2d Cir. 2010) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.  Magistrate judges and district courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence.").

#### B.    17 U.S.C. § 512(f) Remedies

17 U.S.C. § 512(f) is permissive on remedies.  It permits "*any* damages, including costs and attorneys' fees, incurred […] as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."  17 U.S.C. § 512(f); *see Cal. Beach Co. v. Han Xian Du*, 2020 U.S. Dist. LEXIS 199877, *18 (N.D. Cal. Aug. 13, 2020) (construing §512(f) "liberally because the statute's use of 'any damage'").  Notably, the statute expressly permits damages (**1**) as a result of the *removal* of material by Defendant George and (**2**) expenses it getting the material *put back up*.

11

C.    **Application Here**

i.    _Lost Streams_

A typical §512(f) remedy for removal is the lost revenue due to the "interruption" in sales caused by the takedown. *See*, *e.g.*, *Milo Enters. v. Bird-X, Inc.*, 2022 U.S. Dist. LEXIS 53097, *25 n.9 (N.D. Ill. Mar. 24, 2022) ("interruption in its sales"). Ordinarily, this amount is measured based upon an estimate of both the prior sales *amounts* and prior sales *trends* before the takedown and after the materials are properly made available to consumers again. *See Cal. Beach Co.*, 2020 U.S. Dist. LEXIS 199877, at *19. Doeman's damages estimate here is that it lost **$10,000** in lost streaming revenue. Wilson Decl.¶1 ($1,000 based upon the steady state, but $10,000 based upon the trajectory and likely additional streams based upon his views as to how the ability to live perform the music would have affected his streams).

ii.    _Lost Performances_

Likewise, the taking down of Doeman's music, inhibited the live performance of that music by interfering with the legitimacy of Doeman's label, especially given the rising prominence of the song at the time it was taken down. Doeman's damages estimate here is that it lost **$15,000** in lost streaming revenue. Wilson Decl.¶2 ($15,000 as a conservative estimate; $50,000 as an estimate based upon likely future growth had it not been taken down).

iii.    _Lost Time_

Moreover, §512(f) doesn't just compensate the expense of what is _lost_ from the takedown but also the investment of time taken in getting the music put back up. In this situation, that was a significant amount of time because DistroKid took Doeman's music down from all of the streaming services. Doeman's Mr. Wilson estimates that he spent at least 250 hours of his time trying to get the music back up—time spent fighting with DistroKid to figure out what happened, contacting other services, researching what to do, investigating, *etc.* Wilson Decl.¶3.

Given that Mr. Wilson's opportunity cost of his time is a job that he earns roughly $130 / hour, the total amount of expense in his lost time in trying to get his music back up is **$32,500**. Wilson Decl.¶3.

### iv.    _Attorney Fees (as damages)_

17 U.S.C. § 512(f) expressly contemplates "attorneys' fees" as part of the "damages" caused by the takedown. _See Samsonite Ip Holdings v. Henzhen LiangYiYou E-Commerce Co._, 2021 U.S. Dist. LEXIS 80717, *22 (S.D.N.Y. Apr. 26, 2021) ("Apart from the fact that a court is permitted, under the Copyright Act, to shift attorneys' fees and costs to the prevailing party, the portion of the DMCA that is codified at 17 U.S.C. § 512(f) expressly allows for a plaintiff to recover attorneys' fees and costs as a component of a _damages_ award[.]"). Prior to the filing of the suit and the work done on the complaint, Doeman paid attorneys **$2,900**. Wilson Decl.¶4.

### v.    _Attorney Fees (as further remedy)_

17 U.S.C. § 505 permits a prevailing party under this claim to seek attorney fees for the time _prosecuting the case_ under a lodestar arrangement. _See Cal. Beach Co._, 2020 U.S. Dist. LEXIS 199877, at *18 ("As for its attorney's fees and costs, the plaintiff asks to submit a separate motion, and given the statutory entitlement to fees and the court's recommendation for default judgment here, the plaintiff may submit its lodestar fees and costs, and the court will recommend awarding them if the fees-and-costs motion meets the relevant lodestar inquiry."). Plaintiff respectfully requests that the Court award fees here. Defendant George has admitted liability, has no objectively reasonable defense for her spiteful actions intended to use the legal system of takedowns to destroy a small artist, acted with poor motivation in defaulting and refusing to participate in this proceeding, and considerations of compensation and deterrence militate in favor of compensating so similarly situated plaintiffs receive counsel and so that similarly situated defendants are deterred, especially given the havoc Defendant George's behavior has caused.

These lodestar fees will be substantiated in a separate filing pursuant to 17 U.S.C. § 505 and Rule 54(d).

        vi.    <u>Full Costs</u>

Likewise, Doeman respectfully requests that the Court award prevailing-party costs. These costs will be separately justified in a bill of costs pursuant to the 17 U.S.C. § 505, 28 U.S.C. § 1920, and Rule 54(d).

        vii.    <u>Nominal Damages</u>

Doeman is also entitled to nominal damages by law. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1156-1157 (9th Cir. 2016).

## CONCLUSION

For the foregoing reasons, the Court enter default judgment against Defendant George in the amount of **$60,400**, subject to further increases for prevailing-party attorney fees and costs under Rule 54(d).

Date: March 26, 2024

Respectfully submitted,

**DIGITAL JUSTICE FOUNDATION**
A NONPROFIT, PUBLIC-INTEREST LAW FIRM

By <u>*/s/ Andrew Grimm*</u>
    Andrew Grimm (admitted *pro hac vice*)
    DIGITAL JUSTICE FOUNDATION
    15287 Pepperwood Drive
    Omaha, Nebraska 68154
    (531) 210-2381
    Andrew@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOEMAN MUSIC GROUP MEDIA AND PHOTOGRAPHY LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>DISTROKID, LLC, et al.,<br><br>　　　Defendants. | Case No. 23 Civ. 4776 (MMG)<br><br>**DECLARATION OF <u>COUNSEL</u>**<br><br>**IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT RAQUELLA "ROCKY SNYDA" GEORGE** |

I, Andrew Grimm, counsel for Plaintiff in this action, could testify as to the following and hereby declare the following:

a.  The basis for entering default is that Defendant George has been properly served and yet never responded to the complaint.  She was served personally in the State of New York on October 21, 2023.  Dkt.24.

b.  With respect to Defendant George, there is no meaningful procedural history after the service of the complaint.  Before service, difficulties serving Ms. George delayed the case and required extensions of time.  After service, the Court ordered the filing of a motion for default judgment.

c.  I am unsure of whether the Court may appropriately enter judgment as to fewer than all of the defendants and may appropriately determine damages prior to the resolution of the entire action.  I would want to hear and respond to DistroKid's perspective on this.

d.  The proposed elements of damages are detailed in the briefing above and are substantiated in the declaration of Mr. Wilson below.

e.  I am not sure whether an inquest into damages is necessary or unnecessary.  Certain legal citations I have found and have cited above in the section on establishing damages indicate that the Court may enter judgment if it believes that the affidavits supporting damages are sufficient.

2.   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 26, 2024              Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm

Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOEMAN MUSIC GROUP MEDIA AND PHOTOGRAPHY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DISTROKID, LLC, et al.,<br><br>    Defendants. | Case No. 23 Civ. 4776 (MMG)<br><br>**DECLARATION OF <u>PARTY</u>**<br><br>**IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT RAQUELLA "ROCKY SNYDA" GEORGE** |

I, Damien Wilson, am a natural person, am over 18, and am competent to the testify in Court. I could testify as to the following and hereby declare the following in support of entry of default judgment, pursuant to Federal Rule of Civil Procedure 55(b) and Local Civil Rule 55.2:

1.    *Lost Streams*: I am a music creator and member of the Doeman Music Group Media and Photography LLC ("Doeman"), the plaintiff in this action. I lost significant number of streams as a result of Ms. George's takedown requests, not only on the platforms where Ms. George specifically send the takedowns, but across the entire panoply of locations where I streamed my music. I am familiar with her character and the contents of her threats against my music. I believe that she strategically attempted to send takedown requests in a manner to maximize the loss against me and my company. Below I have appended a true and correct screenshot of a document showing that when I was finally able to get my music back up onto my platforms, my views went up significantly:



After I first posted my song in question and it got traction through airtime on Sirius XM, it was receiving over 60,000 streams on YouTube alone every month, and just as many streams from other platforms organically.  At the rate my song was being streamed 60K streams every 3 months from jan-nov 2021 I potentially would have earned another 240k streams organically on top of the 60k streams I had already gotten from oct.30-jan 2021 so 300k streams which potentially is what I was looking at getting in for this record during that time frame which is about $1k. If I had gotten this streamed during for example a rolling loud performance or at similar festivals, which I was realistically unable to perform this music at given the takedown of this music, I could have had over a million streams possibly more and that's estimated to be $7-10k in streaming profit. Not to mention potential radio royalties it may have received because of the notoriety of the record.  Not to mention the followers I lost out on about 4-5k and potential investors who might have been interested in doing business with my company.

2.      *Live Performances*: Moreover, I could not realistically perform the music while it was taken down / offline because an important part of the validity and professionalism as an artist is the ability to have your music on the platforms, like Spotify and Pandora, where fans can access it.  Without my music, it was much more difficult if not highly impracticable and realistically impossible to perform it at a concert venue.  Had it not been taken down, I would have been trying to perform it in the timeframe it was taken down.  I estimate that I would have received significantly more notoriety to my music, both this music and generally.  A conservative estimate on this is that I would have received an additional $15k in concert / performance revenues had this not been taken down, but if it had continued its rise it's possible (and I think likely) that it would have been significantly more than that, going as high as $30k-$50k up to the present timeframe, or even more, if the song had continued to take off.

3.     _Lost Time_: I spent 3 months sending emails to distorkid trying to figure out a solution or get assistance.  I spent just as much time with these websites claiming they could help get my music back up.   DMCA.com.  I filed my own lawsuit in 2022 which took me 2months to draft and had to file it twice b/c the first time I think I filed it incorrectly so I had to pay the filing fee twice which was 250x2 so 500 only to find out I have to have an attorney represent my business b/c its not a regular person.  Not to mention the time I took off work to do all this, where I run a business and make $1,000 per work day running and so, my rough hourly rate is $130 / hour and I estimate that I spent at least 250 hours trying to get my music back up.

4.     _Attorney Fees Incurred Prior to Suit_: I contacted DMCA.com website that is supposed to help file counter claims I paid about 150$ for nothing. Paid lawyer Glen Franklin Koontz Law Corp address 4 barnett st Berryville va 22611 540.277.2100 about 250$ in consultation fees in December of 2021.The operative pleading in this case, Dkt. 4, was properly served along with the summons via personal service effectuated on October 21, 2023.  Additional I paid $2,500 to my nonprofit lawyers for substantial assistance in research and figuring out my appropriate courses of action on or around April 2022, prior to their drafting of the complaint.

5.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 26, 2024                    Respectfully submitted,

_/s/ Damien Wilson_
Damien Wilson
DOEMAN MUSIC GROUP MEDIA & PHOTOGRAPHY LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served via this Court's CM/ECF system to other counsel of record.

Service upon a party in default is *not* required. Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear."). Nonetheless, I have effectuated service of the foregoing (as well as the Court's order and the proposed certificate of default) by arranging to have copies of these submissions sent to Ms. George's last known mailing address, *see* Fed. R. Civ. P. 5(b)(2)(C), supplemented with email attachments provided to Ms. George's last known email address.

DATED: March 26, 2024                    Respectfully submitted,

                                         */s/ Andrew Grimm*
                                         Andrew Grimm