USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOEMAN MUSIC GROUP MEDIA AND
PHOTOGRAPHY LLC,

                                    Plaintiff,

                    -against-

DISTROKID, LLC et al.,

                                    Defendants.

---

23-CV-04776 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

In June 2023, Plaintiff Doeman Music Group Media and Photography LLC ("Plaintiff" or "Doeman") commenced this action by filing a complaint bringing a federal law claim against Defendant Raquella "Rocky Snyda" George as well as state law claims against Defendants DistroKid, LLC and Kid Distro Holdings, LLC (collectively, the "DistroKid Defendants"). *See* Complaint, Dkt. No. 1. At the Court's direction, Plaintiff filed an amended complaint (the First Amended Complaint) on April 18, 2024, to properly plead diversity jurisdiction. Dkt. No. 51 (hereinafter "FAC"). The Court previously entered default judgment as to the claim against George, and before the Court now is the DistroKid Defendants' motion to dismiss the remaining claims. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

Plaintiff is an independent record label that works with the DistroKid Defendants,[1] which operate as a music distributor, to supply Plaintiff's music to various online platforms. *See id.*

---

[1] Throughout the First Amended Complaint, Plaintiff refers to DistroKid, LLC and Kid Distro Holdings, LLC collectively as "DistroKid," and often appears to refer to the entities as a single entity. *See, e.g.*, FAC ¶ 2 ("That company, DistroKid, operates as a music distributor[.]").

¶¶ 2, 64.[2]  According to Plaintiff, the DistroKid Defendants contract and negotiate directly with internet platforms that provide music to the public, such as Spotify, Amazon Music, and iTunes. *Id.* ¶ 2.  These platforms require labels and artists to go through music distributors, such as DistroKid, in order to place their music on the platform.  *Id.*  The independent labels and artists like Doeman that work with the DistroKid Defendants do not have access to the contract terms, negotiations, or communications between the DistroKid Defendants and those platforms, including with respect to the music uploaded on behalf of the independent labels and artists.  *Id.* ¶¶ 53–56, 63.  Per Plaintiff, the DistroKid Defendants operate in "a position of significant market power . . . as the middleman between independent artists and labels (who create music) and the platforms that supply the music directly to the public[.]"  *Id.* ¶ 2.

This action stems from the release of a song called "Scary Movie," which was developed by recording artist and songwriter Damien "Frosty the Doeman" Wilson, who had signed with Doeman.  *Id.* ¶¶ 65, 67.  Wilson paid Defendant George to provide a short clip of her voice for use in the song and agreed to include her name in the song credits.  *Id.* ¶¶ 82–83.

In July 2020, Doeman uploaded "Scary Movie" to the DistroKid Defendants' system, for distribution to various music platforms.  *Id.* ¶ 71.  Prior to uploading the music, the DistroKid Defendants required Doeman to agree to their Terms of Use and Distribution Agreement as a mandatory part of creating a user account and selecting a subscription plan.  *Id.* ¶¶ 68–72.

After the song's release, Wilson and George had a personal falling out and in January 2021, George asked Wilson to remove her name from "Scary Movie" on all platforms.  *Id.* ¶¶ 87–88.  When Wilson did not comply, George used the notice-and-takedown procedures in the

---

[2] All facts are taken from the First Amended Complaint, which the Court assumes to be true for purposes of resolving the motion to dismiss.

Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512, to ask Spotify and other music platforms to remove "Scary Movie" from their sites. *Id.* ¶¶ 92–94, 98–99.

"The DMCA governs the means by which copyright holders can notify online service providers that their sites are hosting or providing access to allegedly infringing material." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021). A copyright holder may send a good-faith "takedown" notice to a provider regarding allegedly infringing material. *See* 17 U.S.C. § 512(c). The DMCA also allows for "counter notifications," through which "creators of allegedly infringing work can effectively appeal a service provider's decision to remove or otherwise disable access to their work." *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 43 (S.D.N.Y. 2017).

Plaintiff alleged that George violated 17 U.S.C. § 512(f) by falsely representing in her takedown requests to Spotify and other platforms that she was the copyright holder of "Scary Movie." FAC ¶¶ 87–99, 140–44. On or around January 7, 2021, the DistroKid Defendants "received a takedown notice from stores and streaming services pertaining to 'Scary Movie.'" *Id.* ¶ 100. The DistroKid Defendants allegedly "knew the specific streaming services and stores that reported the takedown notice for 'Scary Movie,'" and on or around January 7, 2021, they "sent Doeman a form message notifying it of the takedown" and providing the email address of the claimant. *Id.* ¶¶ 101–02. Per Plaintiff, despite the DistroKid Defendants possessing additional information about the takedown requests, they did not tell Plaintiff which stores and streaming services had received takedown notifications or provide Plaintiff with the information it needed to submit a counter notification. *Id.* ¶¶ 104–07. Plaintiff alleged that it made several requests to the DistroKid Defendants for further information "that Doeman could use to get its

music back up," but the DistroKid Defendants did not provide additional information.  *Id.*
¶¶ 108–14.

Plaintiff alleged that the DistroKid Defendants have withheld such information from
Doeman "and others similarly situated . . . pursuant to [their] own internal policies," and that
these policies "create[] an environment where an [independent record label or independent
artist's] music can be taken down, but the [independent record label or artist] is not given any
information or tools, other than the take-down party's contact info [*sic*], to have the music put
back online, especially where it's a misuse of §512 such that the take-down party will not resolve
the issue in good faith."  *Id.* ¶ 114–15.

As against the DistroKid Defendants, Plaintiff brought claims for breach of fiduciary
duty and breach of the implied covenant of good faith and fair dealing, on behalf of itself and a
class of similarly situated persons.  *Id.* ¶¶ 128–39.

## PROCEDURAL HISTORY

On November 16, 2023, the DistroKid Defendants filed the instant motion to dismiss.
*See* Dkt. No. 27.  During the pendency of the briefing, this case was reassigned to the
undersigned.  After the motion was fully briefed, on March 4, 2024, the Court issued an Order
finding that Plaintiff had not properly alleged the citizenship of Plaintiff or the DistroKid
Defendants, which are all limited liability companies ("LLCs"), for the purposes of establishing
diversity of citizenship pursuant to 28 U.S.C. § 1332.  *See* Dkt. No. 38.  Also on March 4, 2024,
the Court issued an Order requiring Plaintiff to move for default judgment against George, who
never appeared in this action or filed any response to the Complaint.  *See* Dkt. No. 39.

Plaintiff subsequently moved for default judgment against George, *see* Dkt. No. 46, and
the Court granted default judgment against George on April 17, 2024.  *See* Dkt. No. 49.  Plaintiff

amended its complaint to allege the citizenship of the LLCs and to make some corrections to its allegations regarding the amount in controversy for purposes of establishing diversity jurisdiction.  *See* FAC ¶ 7(c).

On April 22, 2024, the Court ordered that the DistroKid Defendants could, *inter alia*, rely on their previous motion to dismiss, file a new motion, or supplement their previous motion.  *See* Dkt. No. 54.  The DistroKid Defendants supplemented their previous brief in support of their motion to dismiss.  *See* Revised Mem. of Law in Support of Mot. to Dismiss, Dkt. No. 56 ("Defs.' Br.").

Defendants argue that the Court does not have subject matter jurisdiction over this action and that, if jurisdiction exists, the First Amended Complaint must still be dismissed because Plaintiff failed to state a claim for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing.  *Id.* at 1–2.  In the alternative, Defendants ask that the Court strike Plaintiff's class allegations for failing to satisfy the legal requirements for class action relief.  *Id.* at 2.  Because, as discussed below, the Court does not have subject matter jurisdiction over this action, the motion to dismiss will be granted and the Court need not address the other grounds.[3]

## DISCUSSION

### I.    Legal Standard

"[S]ubject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power."  *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998) (quoting *Curley v. Bignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 (2d Cir. 1990)).  A court will dismiss a case under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of

---

[3] Although the Court need not address the DistroKid Defendants' arguments regarding their Rule 12(b)(6) motion given the finding that the Court lacks jurisdiction over these claims, if the Court did have jurisdiction it would have little trouble granting the DistroKid Defendants' motion on that basis as well, for substantially the reasons set forth in their memorandum of law at pages 3–13.  Defs.' Br. at 3–13.

subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate" the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden to prove it exists by a preponderance of the evidence. *See id.*

A motion to dismiss under Rule 12(b)(1) may be "facial" or "fact-based." A motion is facial when "based solely on the allegations of the complaint or the complaint and exhibits attached to it [*i.e.,* the pleadings]." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). It is fact-based when the defendants "proffer[] evidence beyond the [pleadings]." *Id.* at 57. The motion here is facial, and the Court "accept[s] as true all material factual allegations of the complaint . . . and draw[s] all reasonable inferences in favor of the plaintiff." *See id.* (internal marks and citations omitted). The court may refer to evidence outside the pleadings in resolving a Rule 12(b)(1) motion. *Makarova*, 201 F.3d at 113; *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

Here, Plaintiff asserts that (i) the Court should exercise supplemental jurisdiction over the claims against the DistroKid Defendants under 28 U.S.C. § 1367(a); (ii) there is ordinary diversity jurisdiction under 28 U.S.C. § 1332(a); and (iii) there is jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). FAC ¶ 7. The Court will address each of these arguments in turn.

## II.    Supplemental Jurisdiction

Plaintiff asserts that because the Court has jurisdiction as to Plaintiff's claim against George, which arises under federal law, the Court should exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state law claims against the DistroKid Defendants. *See* Opp. to Mot. to Dismiss, Dkt. No. 35 ("Pl.'s Br.") at 8–10.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To be sufficiently related, a federal and state claim "must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Supplemental jurisdiction is discretionary, *see Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), and 28 U.S.C. § 1367(c) states that a court may decline to exercise jurisdiction if certain circumstances are met. Such circumstances include if "(1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

If any of these categories are implicated, the court must "balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Kolari*, 455 F.3d at 123–24 (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the

federal claims, citing "the absence of a clearly articulated federal interest" or the presence of any

of the other factors); *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where

the federal claims are dismissed before trial, the state claims should be dismissed as well.").

In this case, the federal claim against George does not involve a "common nucleus of

operative fact" with the asserted state law claims—rather it is more like a condition precedent or

prologue to the claims against the DistroKid Defendants, at best.  Indeed, the success or failure

of the claim against George has almost no bearing on the claims against the DistroKid

Defendants, which would seem to exist for Plaintiff regardless of whether George's DMCA

takedown request was based on George's honest belief in her copyright claim or, as Plaintiff

claims, retaliatory and false.  But even if Plaintiff's claim against George was sufficiently related

to its claims against the DistroKid Defendants such that the claims stem from the same "common

nucleus of operative fact," this Court would still decline to exercise supplemental jurisdiction

over the state law claims.

Plaintiff has already obtained judgment with respect to its federal law claim against

George.  *See* Dkt. No. 49.  All that remains with respect to the federal law claim is a

determination of Plaintiff's damages, if any, which is pending before Magistrate Judge

Tarnofsky.  *See* Dkt. No. 50.

Thus, because judgment has already been entered as to the federal claim, the Court

declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C.

§ 1367(c)(3).  Although the Plaintiff argues that the Court has a federal interest because of "the

copyright aspects of the claims," *see* Pl.'s Br. at 9, the balance of considerations weighs against

exercising jurisdiction.  The case is still in its early stages—given the various procedural issues

and attendant briefing, the Court has yet to even hold an initial conference with all the parties

and discovery has not yet commenced.  Little (if any) economy is generated or convenience is saved by exercising supplemental jurisdiction with respect to the claims against the DistroKid Defendants.  *See, e.g.*, *Xiamin Zeng v. Augustin*, No. 17-cv-09988 (JMF), 2019 WL 1284274, at *2 (S.D.N.Y. Mar. 20, 2019) (declining to exercise supplemental jurisdiction partly due to "the relatively early stage of the case").

### III.    Diversity Jurisdiction

#### A.    Ordinary Diversity Jurisdiction

In addition to its claim of supplemental jurisdiction, Plaintiff also asserts that the Court has subject matter jurisdiction under diversity, as Plaintiff and its members are citizens of West Virginia, and the DistroKid Defendants and its members are citizens of Delaware, Massachusetts, or New York.  FAC ¶ 7(c).  The DistroKid Defendants do not contest the assertion of diversity of citizenship, but argue that Plaintiff has failed to meet its burden of showing that the amount in controversy exceeds the $75,000 threshold required by 28 U.S.C. § 1332(a).  Defs.' Br. at 16–19.  Plaintiff alleged in its First Amended Complaint that "the amount in controversy would likely have evidentiary support to exceed $75,000 upon a reasonable opportunity for further investigation, but this depends upon legal rulings about damages."  FAC ¶ 7(c).  Plaintiff argues that the Court should grant jurisdictional discovery so it can determine whether the amount in controversy exceeds $75,000 because the amount "depends upon legal categorization of certain of the damages as allowable or not."  Pl.'s Br. at 10.  Plaintiff offered no further explanation as to the considerations involved in determining the amount in controversy, or the value of damages sought within various potential damages categories.

"[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  The amount in controversy is measured at

the time the complaint is filed. *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003). The party that invokes diversity jurisdiction "has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Scherer*, 347 F.3d at 397 (quoting *Tongkook Am., Inc. v. Shipton Sportwear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)). This is not a difficult burden; there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). Once a plaintiff has made such a good-faith complaint, the party opposing jurisdiction must show "to a legal certainty" that the amount does not meet the jurisdictional threshold. *Id.* (quoting *Wolde-Meskel*, 166 F.3d at 63).

However, the presumption in favor of the plaintiff asserting jurisdiction is only available if the face of the complaint plausibly alleges facts suggesting that the claims exceed the amount in controversy. *See Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *2 (2d Cir. Jan. 26, 2023) (where the amended complaint alleged "generally and conclusorily" that the amount in dispute exceeded $75,000 but did not specify whether this was an amount claimed by each plaintiff or all plaintiffs collectively, finding that the allegations did not, on their face, satisfy the amount in controversy requirement); *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) (summary order) ("[The plaintiff's] allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth."); *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364–65 (S.D.N.Y. 2019) (for diversity jurisdiction under CAFA, which requires an "identical" burden, finding that the presumption of a good faith representation as to the amount in controversy only exists if the face of the complaint alleges facts plausibly

suggesting the claims exceed that amount; "[c]onclusory allegations that the amount-in-controversy requirement is satisfied are insufficient.").

Here, Plaintiff did not plausibly allege that the amount in controversy exceeds $75,000. Rather, Plaintiff alleged that "the amount in controversy would likely have evidentiary support to exceed $75,000," but that whether it exceeds $75,000 "*depends* upon legal rulings about damages." FAC ¶ 7(c) (emphasis added).

Not only is Plaintiff's allegation as to the amount in controversy conclusory, but Plaintiff did not even allege that the amount exceeds $75,000 as to its claims against the DistroKid Defendants; rather, Plaintiff essentially expressed that the amount could potentially exceed $75,000. *See Turban v. Bar Giacosa Corp.*, No. 19-cv-01138 (JMF), 2019 WL 3495947, at *2 (S.D.N.Y. Aug. 1, 2019) (where the pleadings contained only a "formulaic and conclusory recital" that the damages "*are believed to* be in excess of $75,000," and where this allegation was "not plausibly supported by any of the other factual allegations in the counterclaims," the pleading "[fell] short of establishing that [the defendants] have suffered more than $75,000.") (emphasis in original).

Indeed, Plaintiff had alleged in its original complaint that "the amount in controversy exceeds $75,000," *see* Dkt. No. 4 ¶ 7, but it amended this language to express uncertainty as to whether the amount exceeds $75,000 in the First Amended Complaint *after* reviewing the DistroKid Defendants' motion to dismiss, and after it was alerted to the importance of adequately alleging the amount in controversy.[4]

---

[4] Plaintiff's reluctance to aver that its claims against the DistroKid Defendants exceed the required amount in controversy and to make arguments as to the amount in controversy (as explained below) could be because Plaintiff knows or suspects that its claims do not meet this threshold. Although Plaintiff's claims against George were entirely different as a legal matter and thus may theoretically involve different damages, both damages calculations would presumably be premised on lost royalties from the distribution of "Scary Movie." Accordingly, the Court notes that in support of its motion for default

Nor did Plaintiff allege *any* other facts that could plausibly suggest that the amount in controversy exceeds $75,000.  Thus, Plaintiff is not entitled to a presumption that this requirement is met.

In its brief, Plaintiff requested "limited jurisdictional discovery" to ascertain the amount in controversy, but it failed to explain what discovery it could obtain that could provide aid on this issue.  *See* Pl.'s Br. at 10.  Plaintiff argues that "certain fact discovery . . . could statistically indicate the likely trajectory of damages had the takedowns not been effectuated or at least been remedied quickly[.]"  *Id.*  But the Court does not see (and Plaintiff does not provide) any reason why *discovery* is needed at this stage, or why the DistroKid Defendants would have any greater insight into the losses associated with the takedown notice and their response to it than Plaintiff itself would have.  Indeed, in pursuing default judgment against George, Plaintiff itself provided information and argument as to the specific amounts of damages it had incurred as a result of the takedowns.  *See* Dkt. No. 46 at 12-14 (seeking specified damages against George for lost streaming revenue, lost revenue from performances, lost time, and attorneys' fees).

Plaintiff may argue that its claims against the DistroKid Defendants are broader than those against George, but those broader claims have even less support in terms of factual allegations plausibly alleging any damages from any actions other than the specific response to the George takedown notices.  Plaintiff's argument boils down to a plea for grace because it cannot determine the amount in controversy "without a legal determination that [certain] damages are cognizable as of now."  *See* Pl.'s Br. at 10.  Thus, rather than seeking discovery, what Plaintiff really appears to seek is a legal ruling as to the categories of damages that count

---

judgment against George on March 26, 2024, Plaintiff argued that it was entitled to $60,400 in damages (including attorneys' fees, which are not likely to count towards the amount-in-controversy requirement). *See* Dkt. No. 46 at 11–14.

towards the amount in controversy, even though Plaintiff has not even attempted to quantify any of the potential categories of damages in the First Amended Complaint.

The DistroKid Defendants argue persuasively that certain categories of relief requested by Plaintiff should not count towards the amount in controversy requirement.  *See* Defs.' Br. at 18–19 (citing *Schwartz v. Hitron Solutions, Inc.*, 397 F. Supp. 3d 357, 366 (S.D.N.Y. 2019)). They argue that Plaintiff seeks compensatory damages, attorneys' fees and costs, and injunctive relief (though Plaintiff does not specify the injunctive relief it seeks), and that attorney's fees and costs may not be counted towards the amount in controversy because it is not recoverable as a matter of statute or contract with respect to the allegations against the DistroKid Defendants.  *See id.* at 18.  They also argue with respect to compensatory damages and injunctive relief that Plaintiff has pled an indeterminate amount of actual damages and has failed to provide any specificity as to the injunctive relief sought, much less to value the harm sought to be remedied by this unspecified injunctive relief.  *Id.* at 18–19.

Instead of making any attempt to offer arguments or citations to counter the DistroKid Defendants' arguments, Plaintiff merely stated in a conclusory fashion that "the amount in controversy depends upon legal categorization of certain of the damages as allowable or not . . . [and as such] . . . depends upon antecedent legal rulings."  Pl.'s Br. at 10.  It further stated, "Doeman is not asserting diversity jurisdiction but rather requesting jurisdictional discovery and antecedent [legal] rulings."  *Id.*

Plaintiff failed to offer any legal arguments regarding what types of damages should count towards the amount in controversy, and it did not allege any facts indicating the value of damages it seeks within each category, or *any* facts whatsoever that would allow the Court to

ascertain the value of the damages and other relief sought, either in the First Amended Complaint or in its brief in opposition to the DistroKid Defendants' motion to dismiss.

Thus, Plaintiff has failed to meet its burden of pleading that its claims against the DistroKid Defendants can exceed $75,000.

### B.    Jurisdiction Under the Class Action Fairness Act

Finally, Plaintiff asserts jurisdiction under the Class Action Fairness Act.  CAFA confers original federal jurisdiction over any class action (1) that involves 100 or more class members; (2) that involves an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs, and (3) where at least one plaintiff and one defendant are citizens of different states. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006); 28 U.S.C. § 1332(d)(2), (5)(B), (6).

The same liberal pleading standard that applies to ordinary diversity jurisdiction applies to jurisdiction under CAFA; the party asserting federal subject matter jurisdiction must show that it appears to a "reasonable probability" that the aggregate claims of the class exceed $5 million. *See Blockbuster, Inc.*, 472 F.3d at 57–58.  Additionally, courts recognize a rebuttable presumption that the face of the complaint is a good-faith representation of the amount in controversy.  *See Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

The DistroKid Defendants have moved to dismiss the class allegations, arguing, *inter alia*, that Plaintiff has not provided any evidence that the amount in controversy exceeds $5 million.  *See* Defs.' Br. at 19–20.  In response, Plaintiff merely stated (with respect to both ordinary diversity jurisdiction and jurisdiction under CAFA) that "the amount in controversy depends upon [the] legal categorization of certain of the damages as allowable or not."  Pl.'s Br. at 10.

Given the liberal pleading standard, Plaintiff need not provide "evidence" that the amount in controversy exceeds $5 million, as the DistroKid Defendants suggest, if it had plausibly alleged the amount, but here, Plaintiff did not even allege that the amount exceeds $5 million in the aggregate (or make any allegations as to the aggregate amount in controversy). Rather, Plaintiff merely alleged in a conclusory fashion that "[t]his Court also has jurisdiction under 28 U.S.C. § 1332(d)(2)(b)." FAC ¶ 7(d). Such a conclusory allegation is insufficient. Nor has Plaintiff alleged *any* facts whatsoever or provided any other evidence from which the Court may find that the amount in controversy requirement is, or could be, met. *See Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 573 (S.D.N.Y. 2021) ("Where, as here, the aggregate amount in controversy is not obvious from the face of the complaint, the party invoking jurisdiction under CAFA must show . . . that there is a 'reasonable probability' that the amount in controversy meets the threshold of $5 million.").

Indeed, even after it was placed on notice by the DistroKid Defendants' motion to dismiss that its pleading of jurisdiction was potentially inadequate, Plaintiff did not make any showing that it could meet the required amount in controversy. Instead, the Plaintiff amended its allegations to state that the question of whether the amount in controversy met CAFA's requirements (and the requirements of ordinary diversity jurisdiction) "depends" upon some unspecified legal rulings as to the categorization of damages. FAC ¶ 7(c).

Plaintiff's statement that the Court has jurisdiction under CAFA is unacceptably conclusory, and Plaintiff has failed to meet its burden of establishing jurisdiction under CAFA.

**CONCLUSION**

For the reasons explained above, the DistroKid Defendants' motion to dismiss for lack of

subject matter jurisdiction is GRANTED,[5] and the claims against the DistroKid Defendants are

dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate Dkt. Nos.

27 and 56.


Dated:  September 30, 2024
        New York, New York

                                            SO ORDERED.

                                            MARGARET M. GARNETT
                                            United States District Judge

---

[5] Plaintiff requests that it be permitted leave to amend the complaint if the Court were inclined to grant
the DistroKid Defendants' motion for failure to state a claim.  *See* Pl.'s Br. at 27.  To the extent that
Plaintiff was also requesting leave to amend if the Court were inclined to grant the motion for lack of
subject matter jurisdiction, the Court has already allowed Plaintiff to amend the complaint to properly
allege jurisdiction after the DistroKid Defendants' motion to dismiss was fully briefed, *see* Dkt. No. 38,
and Plaintiff took the opportunity to amend the complaint but did nothing to correct the jurisdictional
defects identified by the DistroKid Defendants in their motion to dismiss.  *See* FAC.  Given Plaintiff's
posture even in its opposition briefing regarding its ability to sufficiently plead amount in controversy, the
Court finds that further amendment would be futile and the request is denied.