UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOEMAN MUSIC GROUP MEDIA AND
PHOTOGRAPHY LLC,

                           Plaintiff,

   -v-

RAQUELLA "ROCKY SNYDA" GEORGE,

                           Defendant.

NO. 23-CV-4776 (MMG) (RFT)

**ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

      This matter is before me for an inquest on damages. (ECF 50, Order of Ref.) On May 17, 2024, Plaintiff filed its Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") (ECF 60); Declaration of Andrew Grimm (ECF 60-1); and Declaration of Damien Wilson ("Wilson Decl.") (ECF 60-2). I reviewed Plaintiff's submissions and determined that they did not contain all the information necessary to support Plaintiff's claimed damages. (ECF 64, Order to Suppl.) On February 24, 2025, I directed Plaintiff to make a supplemental submission in further support of its claimed damages. (*Id.*) On April 11, 2025, Plaintiff made its supplemental submission, consisting of: Supplemental Declaration of Damien Wilson ("Suppl. Wilson Decl.") (ECF 69); Declaration of Travon Carr ("Carr Decl.") (ECF 69-1); and Supplemental Declaration of Andrew Grimm (ECF 69-2). I have reviewed Plaintiff's supplemental submissions and determined that they do not contain all the information necessary to support Plaintiff's claimed damages.

**Deficiencies in Plaintiff's Submissions**

**Lost Streaming Revenue.** Plaintiff seeks $10,000.00 in damages for streaming revenue that was lost during the period that Plaintiff's music was unavailable on streaming platforms (the "Take-Down Period"). My February 24, 2025 Order to Supplement directed Plaintiff to identify "the method by which streaming revenue is calculated on each such platform; and the calculations that Plaintiff is using for its damages calculations." (ECF 64, Order to Suppl. at 4.) Plaintiff's supplemental submission explains the calculation of streaming revenue damages of $300.63 for the "Scary Movie" song across all streaming platforms that hosted the song. (ECF 69, Suppl. Wilson Decl. ¶ 4.) Plaintiff then multiplied this figure by three to account for Plaintiff's inability to promote his music during the Take-Down Period, because "promoting a song has a significant and dramatic effect upon its listens and streams." (*Id.*) However, Plaintiff provides no legal or factual basis for tripling the streaming revenue damages for Scary Movie to account for Plaintiff's lost promotion opportunities.

Nor does Plaintiff explain how it got from triple the streaming revenue damages for Scary Movie ($1,081.89) to $10,000.00 in claimed streaming revenue damages for the entire album; Plaintiff does not explain the additional claimed $8,918.11 in damages for lost streaming revenue. (*See* ECF 60, Proposed Findings ¶ 27.)

**Lost Performance Revenue.** Plaintiff requests $15,000 in damages for lost performances caused by Defendant's misleading Notice-and-Takedown ("Take-Down") request. (*Id.* ¶ 28.) My February 24, 2025 Order to Supplement directed Plaintiff to identify "all performances that were lost during the Take-Down Period; and the method by which lost revenues from lost performances, if any, are calculated." (ECF 64, Order to Suppl. at 4.) Plaintiff's supplemental

2

submission includes a declaration from a club promoter who attests that he would have hired and paid Plaintiff's recording artist, Damien Wilson, $20,000.00 for certain performances. (*See* ECF 69-1, Carr Decl. at 3.) Plaintiff provides no legal basis for why it is entitled to receive $15,000.00 of Wilson's earnings for lost performances.

**Lost Salary.** Plaintiff requests $32,500 in damages for lost time for the time spent to reverse Defendant's Take-Down request. (ECF 60, Proposed Findings ¶¶ 9, 29.) The basis for these damages are: (1) the hours Wilson spent to reverse Defendant's Take-Down request, and (2) Wilson's hourly salary of $130.00 per hour. (*Id.* ¶ 9.) Wilson earns that salary by "run[ning] a business separately from his music career to support his family." (*Id.*) Plaintiff, which is a recording label, provides no legal basis for why it is entitled to all or any of Wilson's earnings from a business that appears to be unconnected to Plaintiff. (*Id.*)

**Attorneys' Fees and Costs.** Plaintiff also seeks attorneys' fees and other costs incurred in connection with this litigation. (*See id.* ¶¶ 10-15.) Plaintiff provides documents substantiating some but not for all these requests. (*See, e.g.*, ECF 60-1, Grimm Decl. at 6-11.)

### Order To Supplement

Plaintiff has failed to substantiate all its claimed damages to a reasonable certainty. In the interest of justice, I will afford Plaintiff another opportunity to explain its proposed damages calculations. Accordingly, it is ORDERED that, by **September 30, 2025**, Plaintiff shall make a second supplemental submission in further support of its claimed damages that:

1. Explains the legal and/or factual basis for tripling Plaintiff's calculated damage for lost streaming revenue for one song to account for Plaintiff's lost opportunity to promote its songs during the Take-Down Period;

2. Explains how Plaintiff calculated $8,918.11 in damages for lost streaming revenue for the entire album;

3. Explains the legal bases for Plaintiff's claim for lost performance revenue that would have been earned by Wilson if not for the Defendant's Take-Down;

4. Explains the legal bases for Plaintiff's claim for wages that would have been earned by Wilson working at an unrelated business; and

5. Provides any additional available invoices, bills, records, or other documents that substantiate Plaintiff's requests for attorneys' fees and costs.

DATED:    September 11, 2025
         New York, New York

So Ordered.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**